M. F. SCOTT, ET ALT., *v.* E. N. PILIPO, ET AL.

No. 978.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED FEBRUARY 12, 1917.                DECIDED MARCH 6, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

EQUITY—*reference—master's report—estoppel.*

Certain matters in an equity suit were referred to a master with instructions to proceed as speedily as possible and report within sixty days or show excuse for not so doing; the master held hearings after the sixty days had expired and made reports which were confirmed without objection on the ground that they were not filed within time; from a supplemental decree allowing claims for fees and expenses the decree appealed from was attacked on the ground that the master having failed to file his report within the required time the report and the decree con-

firming it were without jurisdiction and void:   Held, that the question of time was not jurisdictional and the parties having acquiesced in the work of the master after the expiration of the sixty days and received the benefits of his labors are estopped from attacking his report on the ground that it was not filed within time.

JUDGMENT—*res adjudicata.*

Where the jurisdiction of a circuit judge sitting in equity in a partition suit to appoint a master in chancery and refer certain matters to him has been adjudged favorably in prohibition proceedings, a decree later rendered confirming the master's report is not subject to attack on the ground that the circuit judge did not have jurisdiction to appoint the master, that question being *res adjudicata* by reason of the decision in the prohibition proceedings.

SAME—*same.*

A circuit judge allowed a master in chancery a fee out of a fund in court in a pending suit whereupon plaintiffs petitioned the supreme court for a writ of prohibition  against the circuit judge and master prohibiting them from proceeding further with the suit on the ground of disqualification by reason of pecuniary interest; the writ was denied; plaintiffs appealed from the decree thereafter made in the suit assigning as one of the errors the disqualification of the circuit judge and master:   Held, that the decision in the prohibition proceedings was conclusive on the question of disqualification of the judge and master, and, *res adjudicata.*

PARTITION—*attorney and client—attorney fees.*

In a partition suit attorney fees should not be allowed certain defendants where the evidence showing that the services of such attorneys tend to the common benefit of all the cotenants is too indefinite and vague to establish the value and beneficial character of such services.

SAME—*cotenant—accounting for rents.*

Where a supplemental petition is filed in a partition suit, wherein the parties are numerous, praying that process issue against one who has succeeded to the interest of one of the cotenants and collected rents from others occupying a portion of the lands to be partitioned the prayer of the supplemental petition should be granted and an accounting required in the partition suit, all of the parties thereto being interested in the rents.

OPINION OF THE COURT BY QUARLES, J.

At the time the petition for a partition of the lands herein partitioned was filed (September 3, 1897) the lands of Holualoa 1 and 2 were owned by the Hui Aina of Holualoa in which hui there were originally 400 shares, but the hui later purchased from shareholders 46.75 shares, leaving outstanding shares to the extent of 353.25. October 1, 1898, the circuit judge sitting at chambers in equity (hereinafter for convenience called the court) made a decree appointing W. A. Wall and J. D. Paris commissioners to view the lands sought to be partitioned and report to the court what parts of such lands were susceptible of division in kind without injury to the parties and what portions, if any, were not susceptible of such division; what parts, if any, should be sold and the manner best suited to make partition among the parties. February 2, 1899, the said commissioners reported to the court recommending that certain of the lands be sold and the rest of the lands be divided in kind among the shareholders in proportion to the shares held by each. June 13, 1899, a supplemental decree was entered by consent of parties directing a sale of certain of the lands by the commissioner, Mr. Wall, and thereafter such sale was made and report of the sale made by the commissioner, and which was confirmed December 14, 1903. December 17, 1903, on the petition of the commissioner, an order was made by the court authorizing him to employ some person or corporation to make an abstract showing the various owners, at a cost not to exceed $750. The commissioner obtained from Castle & Withington a list of shareholders in the hui, considerable time and work being required to make it and for which they were paid $250. This list purported to show shares outstanding, held by various parties, to the extent of 408.583 shares, and on this basis the money received from the sale (after paying certain costs and ex-

penses and compensation to the commissioner for services and surveys and maps made by order of the court) was distributed in part among the shareholders shown by the said list at the rate of $15 per share. October 12, 1903, another order of sale was made directing the sale of 1000 acres of the land and this sale was made in lots and a report thereof made to the court by the commissioner August 24, 1905. To this report objections were filed by Esther N. Pilipo and thirty-three other defendants, shareholders, acting by A. S. Humphreys, Esq., their attorney, and the objections, by stipulation, were continued to be set for hearing after January 1, 1906. The matter of confirming the report of the last sale again came before the court in April and again in May, 1907, when the then circuit judge presiding in equity, without making any order, orally said, as shown by the minutes of the stenographer, that he refused to confirm it at that time for the reason that he felt that some parties interested were not before the court; that the motion would stand and such parties could be brought in. Nothing further appears to have been done until July and August 1913. August 18, 1913, the court signed an order *nunc pro tunc* as of August 24, 1905, confirming the last sale. February 6, 1914, the plaintiff M. F. Scott petitioned that allotments be made to the various parties according to their rights, and with his petition was filed a list and abstract showing the several parties then holding shares and accounting for all of the 353.25 shares outstanding. April 29, 1914, an interlocutory decree was filed granting the prayer of the petition for allotments and directing that deeds in severalty be made by the commissioner to the parties and to the extent therein named. January 28, 1915, the court made an order referring the suit to A. F. Judd, Esq., as a master in chancery. Mr. Judd declined to act and Mr. Joseph Lightfoot was appointed January 30, 1915, master in place of Mr. Judd, with directions to investigate and report the

condition of the record; to take such further evidence as the parties should present; to ascertain and report the status and condition of the suit; to report whether or not all owners of lands had been made parties; to report findings and conclusions of law and fact; and to report such final decree as the master should recommend be made.' To the appointment of such master the plaintiffs objected and applied to this court for a writ of prohibition prohibiting the master from proceeding on the ground that the court had no jurisdiction to appoint a master, but this court held otherwise (*Scott* v. *Stuart,* 22 Haw. 459). In the said prohibition proceeding the master appeared for himself and the circuit judge and was later allowed a fee of $100. Thereupon the plaintiffs applied to this court for a writ of prohibition to prohibit the circuit judge and the master from proceeding further on the ground that they were both pecuniarily interested and therefore disqualified, but this court denied the writ (*Scott* v. *Stuart,* 22 Haw. 641). The master investigated the records, heard much evidence and finally filed his report, findings, transcript of the evidence heard, and draft of the decree which he recommended be made by the court. One result of the work done by the commissioner was the amendment of the petition and the bringing in of more than fifty defendants, some of whom had theretofore voluntarily appeared. In the original petition one hundred and forty-two defendants were named, some of whom had died prior to the reference to the master, some of whom had sold their shares and the purchasers had not been made parties. April 8, 1916, the report of the master was confirmed in all things and a decree confirming the allotments made in severalty to the different parties was filed, and the allotments appear to have been satisfactory to all parties.

A supplemental report was made by the master and filed March 23, 1916, passing upon sundry claims for fees and

expenses made by the commissioner Wall; by certain defendants acting through Castle & Withington, attorneys; by Esther N. Pilipo and Elizabeth K. Pilipo, acting through E. K. Aiu as attorney; by the plaintiff M. F. Scott for making the abstract hereinbefore mentioned and also for attorney fees paid by plaintiffs. This supplemental report was not passed on in the decree of April 8, but on April 24, 1916, another supplemental decree was filed confirming the said supplemental report and allowing the following claims which are attacked on this appeal, to wit: an attorney fee of $500 allowed to W. R. Castle and other defendants to be paid to Castle & Withington; an attorney fee of $250 allowed to Esther N. Pilipo and Elizabeth K. Pilipo to be paid to their attorney E. K. Aiu; to plaintiff M. F. Scott an attorney fee of $100 paid Thurston & Stanley; the allowance of $500 in addition to $500 theretofore allowed J. Lightfoot as master in chancery. The said decree disallowed the claim of W. A. Wall, commissioner, for a balance of $540, and also a balance of $112.50 claimed for services; the claim of plaintiff M. F. Scott for making abstract in the sum of $750 and his claim for attorney fee paid to Charles Creighton in the sum of $100, with sundry items of cost and expense claimed by plaintiffs. From this last supplemental decree the commissioner, W. A. Wall, and the plaintiffs have appealed. This appeal relates solely to the supplemental decree of April 24, 1916, and to costs and expenses claimed, some of which were allowed and some disallowed, as before shown. Plaintiff M. F. Scott has remitted the allowance of $100 paid to Thurston & Stanley as an attorney fee and relinquished his claim for a fee paid to Charles Creighton.

The plaintiffs, as appellants, attack the decree generally on the ground that the master and the circuit judge were both disqualified as both had a pecuniary interest in the subject-matter of the suit, and on the further ground that

the court was without jurisdiction to appoint a master in chancery. These points are *res adjudicata* by reason of the decisions of this court heretofore referred to and found in 22 Haw. on pages 458 and 651, and we will not further consider them.

The plaintiffs also attack the decree appealed from as error on the further ground that the time within which the master was given to hear the parties and make his report had expired long before he presented his report; that his said report was without jurisdiction, null and void; and that the decree confirming it was without jurisdiction, null and void. The order appointing the master to hear the parties, examine the record in the suit and report its status together with evidence taken by him, and draft such decree as he should recommend, contains this provision among others, "that the said master in chancery shall proceed as speedily as possible in the said matters and shall file the report of his doings as aforesaid within sixty days from this date or give sufficient excuse for not so doing." The record shows that the master held a number of hearings, which were attended by parties plaintiff and defendant, more than sixty days after his appointment, without objection, and this point does not appear to have been raised either before the master or before the court. The master did a large amount of work and his recommendations as to the decree apportioning funds arising from sales undistributed and allotments of lands in severalty were substantially accepted and acted upon by the court to the benefit of the parties, all of whom accepted such benefits without question. Now on this appeal from a supplemental decree allowing attorney fees, costs and expenses in part and disallowing such claims in part, for the first time an attack is made upon the jurisdiction of the court and master on the ground that the master did not act within the time required by the order appointing him. We take the

view that failure to report within sixty days is not jurisdictional and that the plaintiffs by their acquiescence in the actions of the master, and, in receiving the benefits of his work and report without objection on that ground, are now estopped from attacking the report on such ground. The entire record is not before us and it may be that sufficient excuse for not making the report within sixty days was shown below. The reports of the master were properly confirmed by the court, except as herein shown.

The only questions left for us to determine are as to the correctness of the supplemental decree in so far as it allows attorney fees, costs and expenses and disallows claims for other attorney fees, costs and expenses, and refuses to permit the plaintiff M. F. Scott to file a supplemental petition bringing in as a party defendant C. K. Ai for the purpose of having the said Ai account for rents collected for twenty-two acres of the land apportioned under circumstances alleged in said supplemental petition, and we will proceed to consider these questions.

The allowances appearing in said supplemental decree which have not been objected to by the parties herein are approved and will stand. The disallowance of claims, except that of M. F. Scott for $750 for making an abstract, is approved.

The allowance of $500 to W. R. Castle, J. B. Castle and the Kona Development Company for attorney fees to be paid to their attorneys Castle & Withington, and the allowance of $250 to E. N. Pilipo and E. K. Pilipo, attorney fee to be paid to their attorney Eugene K. Aiu, were improper. There is some evidence tending to show that services were rendered by the attorneys named which would tend to the common benefit of all the cotenants, but that evidence is too indefinite and vague and the value and beneficial character of the services were too uncertain to be estimated under the evidence in the record. The two Pilipos were

shown to have conducted dilatory tactics which retarded the determination of this partition suit for several years to the detriment of all the parties and they are now delinquent in paying into court money ·wrongfully received by them out of the proceeds of the sale of lands—the common fund—which they have been ordered to repay into court. We hold that the defendants named shall pay their own attorneys and the said attorney fees are disallowed. The bulk of the work has been performed by the plaintiff M. F. Scott personally, while some of it was done by his attorneys for which nothing is to be allowed. The supplemental decree appealed from did allow the plaintiffs $100, fee paid to their attorneys, but they have remitted the same and withdrawn their claim therefor.

The refusal of the court to allow Mr. Wall his further claims for compensation was authorized under the showing made and such disallowance is approved. Mr. Wall in testifying admitted that he had received for services and expenses in the suit the sum of $4828.18. The various items, claims and allowances theretofore made to him are not in the record before us. Mr. Wall testified at the hearing before the master that his present claims for further compensation were for services rendered, were reasonable, had not been paid and were not included in any claim theretofore allowed him. The court below had the entire record before it and having found that Mr. Wall had been overpaid and that the present claims presented by him be disallowed we will not disturb its conclusion in this regard. The claims of Mr. Wall which were disallowed in the supplemental decree appealed from are for services rendered in 1916 and appear to have been caused by the incompleteness of the plats of allotments made by him in that such plats did not give courses and distances of the exterior boundaries of the various parcels of land allotted. We do not regard the evidence as sufficient to show that

these charges are for services that were necessary and not required by reason of Mr. Wall's own course. The conclusion of the circuit judge that Mr. Wall had been overpaid $3241.69 was, presumably, based upon the theory of the statutory fees allowed commissioners in partition suits are at the rate of five dollars per day. This rule does not apply to services rendered as a surveyor by a commissioner in a partition suit, and where he does the actual surveying and platting he is entitled to reasonable compensation for such services. But where, as in the case at bar, he is required to render further services apparently caused by imperfect or incomplete work done by him, and for which he has been paid, in order to be allowed further compensation he must show by clear and convincing evidence that the additional services for which he seeks compensation were not caused by his own fault, as he is evidently not entitled to compensation for services made necessary by his own fault.

The disallowance of the claim of M. F. Scott in the sum of $750 for making the abstract in this case was contrary to the evidence and facts shown by the record. An order had been made by the court authorizing Mr. Wall, commissioner, to employ some person or corporation to make an abstract at a cost not to exceed $750. Mr. Wall was unable to get such abstract at the cost limited by the court. He employed Mr. Scott to make an abstract under an agreement that Mr. Scott was not to be paid anything for it "unless the same was found to be accurate, complete and correct." The abstract made and furnished by Mr. Scott proved to be accurate and correct and was used to the benefit of all the parties and by reason thereof this whole complicated partition suit has been brought to a successful conclusion by the master and court and the evidence shows that it was worth more to make it than the amount charged for it. Different persons engaged in abstracting had refused

to undertake it at the price limited by the court and which is now claimed by Mr. Scott. We hold that Mr. M. F. Scott shall be allowed $750 for making and furnishing the abstract.

We hold that the court erred in refusing to permit the filing of the supplemental petition presented by the plaintiffs for the purpose of bringing into this suit C. K. Ai to have him account for rents alleged to have been collected by him under the claim of ownership of the share formerly held by one Kamale, under which claim twenty-two acres of coffee land held by the tenants named in said supplemental petition under lease executed by one Akau who had acquired the Kamale share, the interests of said Akau having passed to said C. K. Ai, as alleged in the proffered supplemental petition. All of the cotenants, plaintiffs and defendants, are interested in such rents which the supplemental petition alleges were collected and received by said C. K. Ai in trust for all of the parties to this suit. The court was in error in deciding that the plaintiffs should sue the said C. K. Ai in their own right. Owing to the large number of parties to this suit and the manifest trouble of bringing them into another suit for accounting the entire matter should be settled in this suit and with that end in view we hold that said supplemental petition shall be filed, that process issue against the said C. K. Ai and he be required to account for the rents collected by him as alleged in said supplemental petition unless he shows a good and proper defense to the matters therein alleged and set forth.

Another supplemental petition was filed by one of the plaintiffs in 1914 and an order to show cause against the said C. K. Ai why he should not be made a party defendant and account for rents received was made and on return of said C. K. Ai to the said order to show cause the said order was vacated, from which order so vacated an appeal was had to this court. On that appeal the order vacating

was affirmed on the ground that facts were not alleged in the supplemental petition showing that the said C. K. Ai was interested in the subject-matter of the suit, there being no allegation therein that he was either a cotenant or the lessee of a cotenant (22 Haw. 252). The allegations contained in the supplemental petition here in question take this matter out of the former ruling of this court.

The supplemental decree appealed from is vacated and the cause is remanded to the circuit judge with instructions to make a full and supplemental decree disposing of the matters herein considered in conformity with the conclusions and views herein expressed.

*M. F. Scott* for plaintiffs.

*D. L. Withington* (*Castle & Withington* on the brief) for certain defendants.

*E. K. Aiu* for certain defendants.

*W. J. Robinson* for W. A. Wall.

