STEPHEN KELLER, BERTHA WATSON, ORVILLE EDWARD ROWLETT, a Minor, ALMA JERRY WILLIAM ROWLETT, a Minor, WALTER MELVIN ROWLETT, a Minor, and IVAN RAY ROWLETT, a Minor, by WALTER ROWLETT, Guardian and Curator, v. FRANCES G. KELLER, JOHN LEWIS, JESS CHRISTIAN, HAZEL M. REDMON and HAROLD RAYMOND ROWLETT, Defendants, FRANCES G. KELLER, Appellant, HAZEL M. REDMON and HAROLD RAYMOND ROWLETT, Respondents. —123 S. W. (2d) 113.

Division Two, December 20, 1938.

*S. P. Reynolds* and *Chas. F. Keller* for appellant.

*Breit & Roberts* and *Petree & Wright* for respondents.

COOLEY, C.—This is an action in two counts, the first to determine title and the second for partition, involving an eighty acre tract of land. Plaintiffs Stephen Keller and Bertha Watson are brother and sister of Hobart Keller, deceased, and the Rowlett minor plaintiffs and Hazel Redmon and Harold Rowlett, named as defendants, are children of a deceased sister of said Hobart. They constitute all of his heirs, and likewise all of the heirs of William H. Keller, grantor in the deed here involved. Said William and his wife, father and mother of said Hobart, are dead. Hobart left no issue and died intestate. Defendant Frances G. Keller is his widow. The other two defendants, Lewis and Christian, claimed only as tenants of Frances G. Keller. The interests of Hazel Redmon and Harold Rowlett are the same as those of the minor Rowlett plaintiffs. They were named as defendants in the petition because they had failed to join therein as plaintiffs. By order of record, before the trial, they were made parties plaintiff, were so considered through-

out the trial and in the judgment and are to be considered as plaintiffs and as respondents here. The court found for plaintiffs, treating said Hazel and Harold as plaintiffs, and rendered interlocutory judgment of partition, from which defendant Frances G. Keller alone appealed.

The case involves and is determinable by the construction of a deed to said Hobart from his father William H. Keller, respondents contending that it conveyed to Hobart only a life estate and appellant that it passed the fee. The original deed could not be produced and the record thereof was introduced in evidence. By agreement of the parties a photostatic copy of said record is incorporated in appellant's abstract. Said copy shows that in making the deed a printed form was used, such as was then and is now in general use, having blank spaces to be filled. By the photostatic copy of the record it is shown that in recording the deed the words and letters employed in filling the blank spaces and making certain interlineations in the printed form used in making the deed were made by typewriter. Whether in the original deed they were in pen and ink or typewritten is not disclosed. The recorder evidently used a typewriter instead of a pen in making his records. In copying the deed herein we italicize the words and letters which appear typewritten in said photostatic copy. The deed reads:

"THIS INDENTURE, Made on the *Fifth* day of *August* A. D. One Thousand Nine Hundred and *eighteen* by and between *William H. Keller and his wife Mattie Keller* of *Holt County, Missouri* parties of the first part, and *Hobart Keller during his life time, and at his death to his heirs* of the County of *Holt* in the State of *Missouri* party of the second part:

"WITNESSETH, That the said *parties* of the first part, in consideration of the sum of *Eight Thousand* Dollars, to *them* paid by the said party of the second part, the receipt of which is hereby acknowledged do by these presents Grant, Bargain and Sell, Convey and Confirm unto the said party of the second part, *during his life time and at his death to his* heirs and assigns, the following described lots, tracts or parcels of land, lying, being and situated in the County of Holt and State of Missouri, to-wit:

*All of the west half (W½) of the Southeast quarter (SE¼) of Sec. thirty-two (32) Township Sixty-two (62) of Range Thirty-seven (37), Holt Co. Mo., and containing eighty (80) acres more or less.*

"I. R. Stamps
"$8.00 attached

"TO HAVE AND TO HOLD the premises aforesaid with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining, unto the said party of the

second part, and unto *his* heirs and assigns, Forever; the said *Grantor* hereby covenanting that *they are* lawfully seized of an indefeasible estate in fee in the premises herein, conveyed; and *they* have good right to convey the same; that the said premises are free and clear of any incumbrances done or suffered by *them* or those under whom *they* claim, and that *they* will Warrant and defend the title to the said premises unto the said part*y* of the second part, and unto *his* heirs and assigns, Forever, against the lawful claims and demands of all persons whomsoever.

"IN WITNESS WHEREOF, The said part*ies* of the first part ha*ve* hereunto set *their* hands and seals, the day and year first above written.

"Signed, Sealed and Delivered in Presence of Us:

"*William H. Keller*    (SEAL)<br>
"*Mattie Keller*    (SEAL)<br>
      (SEAL)<br>
      (SEAL)"

(Acknowledgment in usual form.)

In view of appellant's contention that it cannot be determined where the words "during his lifetime and at his death to" as they occur the second time in the deed belong, we make this further explanation of the copy before us: Said copy being a *photostatic* copy of the record it is apparent that the record book was prepared with printed forms corresponding to the forms of deeds in general use so that the recorder made his record by using a page containing the appropriate form and filling in the blank spaces with a typewriter. In the copy before us the words "Hobart Keller during his lifetime and at his death to his heirs," where they first appear, designating the "party of the second part," are between the third and fourth printed lines, the third line ending with "and" and the fourth beginning with "of the county." There is no controversy as to where that phrase belongs in the deed. The words "during his lifetime and at his death to" where they appear the second time are typed between the seventh and eighth printed lines and above the printed words "the second part, — heirs and assigns, the following," said word "following" ending the eighth printed line. The word "his" is typed in the blank space originally left between "part" and "heirs," as above indicated. There is no caret to indicate the place where the interlineation was intended to be made but it seems obvious that it was intended to be where we have placed it in setting out the deed hereinabove. Read thus the interlined words connect logically and reasonably with the words immediately preceding and following them and make sense. Otherwise they would seem to have no place or purpose, and that they were inserted intentionally and for a purpose cannot be doubted.

We have then a deed which first names "Hobart Keller during his lifetime, and at his death to his heirs" as "party of the second part," and then grants to "said party of the second part during his lifetime and at his death to his heirs and assigns" the land in controversy. The first question is, does that deed give Hobart Keller a life estate only, or the fee?

Another deed that may require some notice is one made by Hobart to his wife, defendant Frances, through which she claims to be the owner in fee of the land in controversy. It is dated July 5, 1935; names Frances G. Keller as grantee, recites a consideration of "one dollar and other valuable considerations," and purports first to grant, bargain and sell, convey and confirm "unto the said party of the second part, her heirs and assigns," the said land. Immediately following the description of the land and preceding the *habendum* clause are these words: "The grantor deeds his wife, Frances G. Keller, his life estate in the above land." Except for those words said deed is in form a general warranty deed.

In our opinion the deed from William Keller to Hobart Keller gave to the latter only a life estate. It is well settled in this State that in construing deeds, as in construing wills, the cardinal rule of construction is to ascertain the grantor's intention and give effect thereto if practicable and not in conflict with some positive rule of law and in ascertaining such intention all the provisions of the deed are to be considered. Technical distinctions between the various parts may be ignored and the grantor's intent sought from all parts of the instrument without undue preference to any and the instrument is to be so construed, if possible, as to carry out the maker's intention. [Long v. St. Louis Union Trust Co., 332 Mo. 288, 57 S. W. (2d) 1071, and cases cited.] In the deed before us, in the first blank space available in the printed form, the parties to whom the grant is to be made are designated "Hobart Keller during his lifetime and at his death to his heirs." The scrivener thus gave expression to the thought that Hobart was to take but a life estate in the first blank space that appropriately could be used for the purpose. [See Bank of Brumley v. Windes, 314 Mo. 206, 282 S. W. 296.] Following that, in the granting clause the grant is made "unto the said party of the second part during his lifetime and at his death to his heirs and assigns." Thus twice in the premises of the deed, once in designating the second party and again immediately following the operative words of conveyance, appears a clearly indicated intent to convey to the named grantee only an estate "during his lifetime." And it is to be kept in mind that those words were not in the printed form but were intentionally written in and for a purpose. In a similar case this court held that where words indicating an intent to

convey only a life estate were thus *written* while those claimed to show an intent to convey a greater interest were simply parts of a printed form, "if there is any conflict between them, the written must prevail." [Davidson v. Manson, 146 Mo. 608, 618, 48 S. W. 635.] That is reasonable, when we are looking for the grantor's intent. A careless or unskilled scrivener might inadvertently or through ignorance of their import fail to strike out a word or words of a printed form but he would not inadvertently or without purpose write in words such as we find interlined in this deed.

In Bank of Brumley v. Windes, supra, the deed named "Martha J. Windes, our daughter and the heirs to her body" as "parties of the second part." The granting clause read "unto said parties of the second part, *her* heirs." (Italics ours.) *Habendum* was to "said party of the second part and unto her heirs;" warranty, "unto said party of the second part and unto her heirs and assigns forever." In no part of the deed except that above indicated were the words "heirs of her body," "bodily heirs" or similar words used. The deed was held to convey to said Martha a life estate only, with contingent remainder to her children. The court said "The inconsistent and indiscriminating use of singular and plural nouns and pronouns in designating or referring to the party of the second part is indicative merely of the carelessness or unskillfulness of the scrivener. It should be accorded no other significance." That observation is applicable in the instant case.

▇▇ Appellant says the words "during his lifetime and at his death to his heirs" *in line four* of the deed (where they first appear) "are in the description part of the deed and are no part of the deed and convey nothing" and amount only to "identification and description of the grantee." In Bank of Brumley v. Windes, supra, the words "heirs to her body" appeared only in the same part of the deed there under construction. But in making this argument appellant contends and assumes that the intended and proper place in the deed for those words as used the second time cannot be determined and therefore they must be ignored as having no proper place in the deed and as though they were not there. This contention cannot be allowed. The words are there, were written there with a purpose, and as we have pointed out were obviously intended to be read where we have shown them in copying the deed. Thus read they make sense, otherwise they would not; and thus read they distinctly and affirmatively make the grant to Hobart Keller "during his lifetime" only.

Appellant stresses the use of the word "assigns" especially in the *habendum* clause "To have and to hold . . . unto the said party of the second part and unto his heirs and assigns forever." It is

argued that the use of the word "assigns" indicates an intent to convey the fee because it imports a power of sale or disposition of the land. We observe, *en passant*, that a power of sale may be coupled with a life estate but if it is not exercised it leaves both the life estate and the remainder unaffected. If exercised it cuts off the remainder. [Grace v. Perry, 197 Mo. 550, 95 S. W. 875.] But appellant's argument does not proceed on the theory of a *life estate* in Hobart, with power of sale exercised by his deed to his wife.

In support of her contention that the use of the word "assigns," especially in the *habendum*, shows an intent to pass the fee appellant cites Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471; and Tennison v. Walker (Mo.), 190 S. W. 9. In the Gannon case the provision of the will claimed on one side to create a life estate and on the other to pass the fee was ambiguous, so much so that it was differently construed by this court at different times;—by Division One in Gannon v. Pauk, 183 Mo. 265, 83 S. W. 453, to create an estate tail at common law, which by statute was converted into a life estate with remainder over; by the court en banc in Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162, holding that it created a defeasible fee which had become absolute because the condition on which it was to fail had not happened and no longer could happen. For the history of that much litigated will in this court see Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471, supra, its third appearance here. Because of the ambiguous phraseology of the provision there under consideration the court, in Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471, gave weight to the use of the word "assigns" though not by any means basing its conclusion alone on the use of that word. Other portions of the same paragraph of the will and other clauses of the will were considered in the same connection. And it is to be noted further that the part of said opinion discussing that question received the concurrence of only three of the judges of the court en banc.

In Tennison v. Walker, supra, the word "assigns" was again given weight because of the peculiar phraseology and wording of the deed there in question. That case was distinguished by Division One of this court in Kane v. Roath, 310 Mo. 684, 276 S. W. 39, and by Division Two in Crismond v. Kendrick, 325 Mo. 619, 29 S. W. (2d) 1100. In both those cases the deeds there under consideration were held to convey life estates notwithstanding the use of the word "assigns" similar to its use in the instant case. Without taking space further to distinguish the Gannon and Tennison cases we do not regard them as sustaining appellant's contention. [Tennison v. Walker, supra, cited with approval Utter v. Sidman, 170 Mo. 284, 70 S. W. 702.] In Crismond v. Kendrick, supra, 325 Mo. l. c. 632, 29 S. W. (2d) 1100, speaking of Utter v. Sidman, supra, we said:

"In the latter case the deed in question recites a consideration of $3,000, paid by Frances A. Clark, and names said Frances A. Clark in the granting clause as grantee. The *habendum* clause is 'unto the said Frances A. Clark and her bodily heirs and assigns, forever.' The covenant of warranty is: 'I, the said James A. McCullah, hereby covenanting to and with the said Frances A. Clark, *her heirs and assigns, for herself, her heirs, executors and administrators,* to warrant and defend the title of the premises hereby conveyed, against the claim of every person whatsoever.' (Italics ours.) The court reviews many decisions of this and other states and holds that the deed in question gave Frances A. Clark only a life estate with remainder to her bodily heirs. In that case, as in this, it was argued that the use of the word 'assigns' in the *habendum* and other clauses indicated an intention to pass to Frances A. Clark more than a life estate, but the court denied the contention. The deed in that case also showed a purchase by Frances A. Clark, not a gift to or settlement upon her."

The *habendum* clause and the word "assigns" used therein are of course to be considered along with other parts of the deed in arriving at the grantor's intent. But the word "assigns" is not alone controlling. We do not think there is in the deed before us ambiguity which requires special significance to be given to the use of the word "assigns." [Crismond v. Kendrick, supra.] We think the deed clearly shows an intent on the part of the grantor to limit the estate conveyed to Hobart Keller to a life estate. ■ That Hobart himself so understood and so interpreted it is shown by his subsequent deed to his wife, wherein he says, "The grantor deeds his wife, Frances G. Keller, his life estate in the above land." If necessary to its proper construction the interpretation given a deed or other written contract by the parties thereto may be given consideration. [Carter v. Foster, 145 Mo. 383, 47 S. W. 6; Warne v. Sorge, 258 Mo. 162, 167 S. W. 967.] In the latter case it was held that the life tenant, Charles G. Warne, could not place upon the deed there under consideration a construction which would bind the remaindermen but, said the court, 258 Mo. l. c. 170, 167 S. W. 967:

"While all this is true, it is well known that many people place a somewhat different shade of meaning upon the same words—Charles G. Warne was likely to understand the language of his mother and the trustee, and the meaning they intended to convey by the words used in the deed, better than others who did not know those parties and who are called upon to construe their language forty or fifty years after the deed was written. For this reason the interpretation which Charles G. Warne placed upon this deed is entitled to some weight."

It results from the foregoing that the judgment below was right and should be affirmed. It is so ordered. *Westhues, C.,* concurs; *Bohling, C.,* absent.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.